**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PENNECO OIL COMPANY, INC. and | ) | |
| PENNECO PIPELINE CORPORATION, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 16-1918 |
| | ) | Chief Judge Joy Flowers Conti |
| ENERGY CORPORATION OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## Opinion

### I. Introduction

Plaintiffs Penneco Oil Company, Inc. ("Penneco Oil") and Penneco Pipeline Corporation ("Penneco Pipeline" and together with Penneco Oil, "Penneco") filed an "Amended Complaint and Petition to Confirm Arbitration Award in part and Vacate Arbitration Award in part" ("Amended Complaint") (ECF No. 13), following an award of arbitrator issued on October 27, 2016, in favor of Penneco on 100% of its compensatory damage claims against defendant Energy Corporation of America ("ECA"), but against Penneco on its' claim for attorney's fees. Penneco brought suit seeking confirmation of the damages award (Count I), vacatur of the arbitrator's decision not to award Penneco attorney's fees (Count II), and relief for ECA's alleged continuing wrongful fee deductions (Count III). In response, ECA alleges: 1) it has paid to Penneco all damages awarded by the arbitrator, 2) there is no basis for vacating the arbitrator's award with respect to attorney's fees, and 3) ECA's deductions are correct and in accord with the award.

Pending before the court are Penneco's motion for partial summary judgment and ECA's cross-motion for summary judgment. ECF Nos. 31 & 34. This matter is fully briefed and ripe for disposition. As more fully explained below, Penneco's motion for partial summary judgment

will be granted, and ECA's motion for summary judgment will be granted in part, and denied in part.

## II.  Factual and Procedural Background

Penneco and ECA, as successor to Eastern American Energy Corporation, are parties to two agreements: The "Farmout Agreement," dated November 30, 2006, in which ECA acquired the right to drill on certain property pursuant to leases held by Penneco (ECF No. 13-1); and the "Drilling and Operating Agreement," dated September 30, 2007 (ECF No. 13-2).

### A.  Farmout Agreement

By operation of the Farmout Agreement, Penneco Pipeline holds an overriding royalty interest in certain leases, obligating ECA to pay Penneco Pipeline an overriding royalty interest as a percentage of the well revenue from production of the wells.  Def. Combined Concise Stmt. Mat. Facts, ¶¶ 3-4 (ECF No. 49); Farmout Agreement, ¶ 4.  Paragraph 14 of the Farmout Agreement granted to Penneco "its affiliates or assignees" the right to elect to acquire a working interest in certain wells.  ECF No. 49, ¶ 5; Farmout Agreement, ¶ 14.  Penneco Pipeline's assignee, Penneco Oil, elected to acquire a working interest in three wells, and pursuant to the Farmout Agreement Penneco and ECA entered into the "Drilling and Operating Agreement." ECF No. 49, ¶ 5; Farmout Agreement, ¶ 14.

### B.  Drilling and Operating Agreement

Pursuant to the Drilling and Operating Agreement, Penneco Oil holds working interests in certain wells, which obligates ECA to pay working interest distributions to Penneco Oil.  ECF No. 49, ¶¶ 3-4.  Paragraph 15 of the Drilling and Operating Agreement provides that it is governed by the laws of the Commonwealth of Pennsylvania.  Pl. Combined Concise Stmt. Mat.

Facts, ¶ 3 (ECF No. 47); Drilling and Operating Agreement, ¶ 15. Paragraph 21 of the Drilling

and Operating Agreement provides that "[a]ny controversy or dispute involving this Agreement

will be settled by arbitration in Greensburg, Pennsylvania, in accordance with the rules then

followed by the American Arbitration Association." ECF No. 47, ¶ 4; Drilling and Operating

Agreement, ¶ 21. Paragraph 21 also states in relevant part as follows:

> Any decision or award of the arbitrators will be final and conclusive on the parties
> to this Agreement and there will be no appeal therefrom other than for gross
> negligence or willful misconduct. The losing party shall reimburse the winning
> party for its legal fees and the losing party shall pay for all other costs associated
> with the arbitration. . . .

Drilling and Operating Agreement, ¶ 21; ECF No. 47, at ¶ 5.

### C. The Arbitration

Penneco initiated an arbitration proceeding against ECA on April 21, 2015 (ECF No. 13-

2), followed by an Amended Arbitration Demand (ECF No. 13-4), and ECA's counterclaim

(ECF No. 13-6). ECF No. 47, ¶¶ 6-8. Penneco alleged that ECA had improperly withheld

overriding royalty and working interest payments and improperly charged certain fees. ECF No.

13-3. Penneco sought specified monetary damages in relief as well as attorney's fees and

arbitration costs in an amount to be determined. Id. at 9-10.

On June 29, 2016, the arbitrator issued an Amended Scheduling Order (ECF No. 13-9),

scheduling the arbitration hearing for September 27-28, 2016, and directing the parties to

disclose all exhibits by August 19, 2016. ECF No. 47, ¶ 9. The arbitration hearing was held

before the arbitrator on September 27 and 28, 2016, pursuant to the American Arbitration

Association ("AAA") Commercial Rules. Id. ¶ 10. Relevant to the instant motions, Penneco

introduced two exhibits at the hearing, Exhibit 54 and Exhibit 55, both specifically identified "as

3

demonstrative" exhibits.  Id. ¶ 11.  Exhibit 54 is labeled as Penneco's "Damage Summary" for

withheld interest payments and indicates that "Attorney's Fees and Costs," are "TBD."  ECF No.

37-4, at 2.  Exhibit 55 is labeled as Penneco's "Damage Summary" for improper deductions and

indicates that "Attorney's Fees and Costs through July 29, 2016" are "$98,566.97."  ECF No. 37-

5, at 2.

### 1. Damages Award

On October 27, 2016, the arbitrator issued an award, finding in favor of Penneco on all its

damages claims against ECA and ECA's counterclaim, and awarding damages of $319,913.61 to

Penneco.  Award of Arbitrator, Oct. 27, 2016 (ECF No. 13-6); ECF No. 47, ¶ 14; ECF No. 49, ¶¶

13-14.  ECA tendered full payment of the damages awarded by the arbitrator, and those amounts

were accepted by Penneco.  ECF No. 49, ¶¶ 27-28.

### 2. Attorney's Fees and Arbitration Costs Determination

Paragraph 4 of the arbitration award addresses Penneco's request for attorney's

fees and states as follows:

> 4.  Claim for Attorney's Fees - Pursuant to paragraph 21 of the Drilling and
> Operating Agreement the losing party shall pay for costs associated with the
> arbitration.  There was no demonstrative evidence proffered by Claimant at
> the hearing to support its claim for attorney's fees.  No attorney fees are
> awarded.

ECF No. 13-6, ¶ 4.  Paragraph 5 of the arbitration award also cites paragraph 21 of the

Drilling and Operating Agreement and states as follows:

> 5.  Claim for Arbitration Costs - Pursuant to paragraph 21 of the Drilling and
> Operating Agreement the losing party shall pay for costs associated with the
> arbitration.  Respondent [ECA] shall pay the administrative fees of the arbitration
> including the arbitrator's compensation.

Id. ¶ 5.  The arbitrator ordered ECA to "reimburse [Penneco] the sum of $12,440.51

representing that portion of [the administrative] fees in excess of the apportioned costs previously incurred by [Penneco]." ECF No. 47, ¶ 16; ECF No. 13-6. It is undisputed that Penneco was the winning party and ECA was the losing party.

On November 7, 2016, Penneco submitted a Motion to Modify the arbitration award to the AAA, requesting that the arbitrator modify the award with respect to the attorney's fee determination (ECF No. 13-7). ECF No. 47, ¶ 18. In the motion, Penneco submitted an affidavit of its counsel stating that through the date of the arbitration hearing it had incurred $183,105.97 in attorney's fees associated with the arbitration. ECF No. 47, at ¶ 19. The arbitrator summarily denied Penneco's Motion to Modify without explanation (ECF No. 13-8). ECF No. 47, ¶ 21.

### 3. Fee Deductions and Charges

With respect to Penneco's claim for withheld interest payments and gathering and marketing fees the arbitrator in the award concluded as follows:

1. Override and Working Interest Payments - Pursuant to paragraph 15 of the Farmout Agreement [ECA] shall pay the sum of $12,699.41 which is the interest due on the withheld override and working interest payments not made timely.

2. Claim for Gathering Fees – Under the Farmout Agreement, paragraph 4(a) gathering fees are permitted provided they are reasonable. [ECA] proffered no demonstrative evidence to support its claim of reasonableness. Under the Drilling and Operating Agreement, amended paragraph 6, gathering fees are not permitted but were charged. [ECA] shall pay [Penneco] $225,812.73 which includes principal and interest.

3. Claim for Marketing Fees - Under the Farmout Agreement, paragraph 4(a) marketing fees are permitted provided they are reasonable. [ECA] proffered no demonstrative evidence to support its claim of reasonableness. Under the Drilling and Operating Agreement, amended paragraph 6, marketing fees are not permitted but were charged. [ECA] shall pay [Penneco] $68,960.96 which includes principal and interest.

ECF No. 13-6, ¶¶ 1-3.  By operation of the arbitration award, the arbitrator held that the gathering fee deduction from the overriding royalty interest payments due to Penneco under the Farmout Agreement could not exceed $0.073/DTH, and the marketing fee deduction from the overriding royalty interest payments due to Penneco under the Farmout Agreement could not exceed $0.03/DTH.  ECF No. 49, ¶¶ 15-16.   The post-production gathering fee permitted by the arbitration award is $0.073/DTH under the Farmout Agreement.  ECF No. 49, ¶ 19; see Am. Compl. ¶ 32; Pl. Resp. to Def. First Requests for Admission, Production of Documents, and Interrogatories, ¶ 3 (ECF No. 31-4, at 42).  The "reasonable allowed marketing fee [permitted by the arbitration award] was $0.03/DTH" under the Farmout Agreement.  Am. Compl. ¶ 32.

### D. Amended Complaint

Penneco sets forth three claims in the Amended Complaint.  ECF No. 13.  In Count I Penneco moves to confirm the arbitrator's award in favor of Penneco in the total amount of $319,913.61, alleging that ECA failed to make full payment.  Am. Compl. ¶ 38-40.  Penneco specifically excludes from its request to confirm the arbitrator's award the arbitrator's decision that no attorney's fees would be awarded to Penneco.  Id. ¶ 38.  In Count II, Penneco seeks to vacate the arbitrator's decision not to award attorney's fees to Penneco.  Id. ¶¶ 55-56.  Finally, in Count III, Penneco seeks relief for ECA's alleged continuing wrongful deduction of gathering and marketing fees in defiance of the arbitrator's award.  Id. ¶¶ 58-59

Penneco seeks summary judgment only on its request to vacate the arbitrator's decision not to award attorney's fees.  ECF No. 34.  If successful, Penneco requests a remand to the AAA for a determination of Penneco's attorney's fees.  ECF No. 34-1.  Penneco filed a brief in support of its motion (ECF No. 35), a concise statement of material facts (ECF No. 36), an appendix

(ECF No. 37), a reply to ECA's brief in opposition (ECF No. 45), a reply to ECA's concise

statement of material facts (ECF No. 44), and a combined concise statement of material facts

(ECF No. 47). In response to the motion, ECA filed a brief in opposition (ECF No. 38), and a

response to Penneco's concise statement of material facts (ECF No. 39).

ECA seeks summary judgment on all three of Penneco's claims. ECF No. 34. ECA filed

a brief in support of its motion (ECF No. 33), a concise statement of material facts (ECF No. 32),

an appendix (ECF Nos. 31-1 to 31-5), a reply to Penneco's brief in opposition (ECF No. 43), and

a combined concise statement of material facts (ECF No. 49). In response to the motion,

Penneco filed a brief in opposition (ECF No. 40), a response to ECA's concise statement of

material facts (ECF No. 41), and an appendix (ECF No. 42).

## III.  Standard of Review

Summary judgment may only be granted where the moving party shows that there is no

genuine dispute about any material fact, and that judgment as a matter of law is warranted. Fed.

R. Civ. P. 56(a). Pursuant to Federal Rule of Civil Procedure 56, the court must enter summary

judgment against a party who fails to make a showing sufficient to establish an element essential

to his or her case, and on which he or she will bear the burden of proof at trial. Celotex Corp. v.

Catrett, 477 U.S. 317, 322 (1986). In evaluating the evidence, the court must interpret the facts

in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or

her favor. Watson v. Abington Twp., 478 F.3d 144, 147 (3d Cir. 2007).

In ruling on a motion for summary judgment, the court's function is not to weigh the

evidence, make credibility determinations or to determine the truth of the matter, but only to

determine whether the evidence of record is such that a reasonable jury could return a verdict for

the nonmoving party. <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150–51 (2000) (citing decisions); <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 248–49 (1986); <u>Simpson v. Kay Jewelers, Div. of Sterling, Inc.</u>, 142 F.3d 639, 643 n. 3 (3d Cir. 1998). The mere existence of a factual dispute, however, will not necessarily defeat a motion for summary judgment. Only a dispute over a material fact—that is, a fact that would affect the outcome of the suit under the governing substantive law—will preclude the entry of summary judgment. <u>Liberty Lobby</u>, 477 U.S. at 248.

## IV. Discussion

As noted, Penneco seeks summary judgment on its primary claim set forth in Count II seeking to vacate the arbitrator's decision not to award attorney's fees. Penneco argues that the arbitrator exceeded her powers or so imperfectly executed her powers such that the court may vacate the arbitrator's award with respect to attorney's fees under 9 U.S.C. § 10(a)(4). ECA argues in opposition that Penneco did not meet its high burden of proof for vacating an arbitration award. As discussed below, the court finds that summary judgment on Count II in favor of Penneco is appropriate.

ECA seeks judgment as a matter of law on Penneco's remaining two claims. With respect to Count I, the court finds that under § 9 of the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"), the court must grant an application to confirm an arbitration award even though there is no dispute that ECA has paid to Penneco the damages awarded by the arbitrator and will therefore deny ECA's motion for summary judgment. Finally, summary judgment in favor of ECA on Count III is appropriate as the court finds that the record evidence establishes that ECA

is in compliance with the arbitrator's award with resepct to gathering and marketing fee deductions.

## A. The Arbitrator's Attorney's Fee Determination: Count II

In Count II Penneco requests that the court vacate paragraph 4 of the arbitrator's award. In paragraph 4, the arbitrator acknowledged that attorney's fees were governed by Paragraph 21 of the Drilling and Operating Agreement, but declined to award any fees. ECF No. 13-6, ¶ 4. The arbitrator justified her decision not to award attorney's fees by explaining that there was no demonstrative evidence proffered by Penneco to support its claim. Id.

Before addressing the merits of Penneco's claim, the court must establish the appropriate standard to apply to Penneco's request to vacate a portion of the arbitrator's award. ECA argues that the court must apply the heightened contractual standard for an appeal of the award set forth in the parties' Drilling and Operating Agreement. Paragraph 21 of that Agreement provides in relevant part that "[a]ny decision or award of the arbitrators will be final and conclusive on the parties to this Agreement and there will be *no appeal therefrom other than for gross negligence or willful misconduct*." Drilling and Operating Agreement, ¶ 21 (emphasis added). ECA argues that Penneco cannot meet this standard and in fact Penneco never argues that the arbitrator committed gross negligence or willful misconduct. Penneco implicitly agrees that it cannot meet this standard by arguing that it is *not appealing* the arbitrator's award on the merits. Instead, Penneco contends that it is appropriately moving to vacate a portion of the award pursuant to § 10(a)(4) of the FAA. Section 10(a)(4) states:

> **(a)** In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration--
> **. . .**

**(4)** where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(4). Therefore, the court will consider Penneco's request for vacatur under the narrow FAA standard for vacating an award.

"There is a strong presumption under the Federal Arbitration Act in favor of enforcing arbitration awards." Brentwood Med. Assocs. v. United Mine Workers of Am., 396 F.3d 237, 241 (3d Cir.2005) (internal citation omitted). "When parties move to confirm or vacate an arbitration award, 'the court's function in confirming or vacating a commercial arbitration award is severely limited.'" Daugherty v. Washington Square Securities, Inc., 271 F.Supp.2d 681, 685-86 (W.D.Pa.2003) (quoting Mutual Fire, Marine & Inland Ins. Co. v. Norad Reinsurance Co., 868 F.2d 52, 56 (3d Cir.1989)). A district court may vacate an arbitration award "'only under [the] exceedingly narrow circumstances' listed in 9.U.S.C. § 10(a)." Freeman v. Pittsburgh Glass Works, LLC, 709 F.3d 240, 251 (3d Cir. 2013) (quoting Dluhos v. Strasberg, 321 F.3d 365, 370 (3d Cir. 2003)). Pursuant to § 10(a)(4) of the FAA, relied upon by Penneco, a district court has "the authority to vacate awards where arbitrators 'exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.'" Hamilton Park Health Care Ctr. Ltd. v. 1199 SEIU United Healthcare Workers E., 817 F.3d 857, 861–62 (3d Cir. 2016) (quoting 9 U.S.C. § 10(a)(4)).

A district court may also vacate an arbitrator's decision "where the arbitrator's decision evidences manifest disregard for the law rather than an erroneous interpretation of the law." Local 863 Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Jersey Coast Egg Producers, Inc., 773 F.2d 530, 533 (3d Cir.1985). The United States Court

of Appeals for the Third Circuit "has held that there must be absolutely no support at all in the record justifying the arbitrator's determinations for a court to deny enforcement of an award." News Am. Publications, Inc. Daily Racing Form Div. v. Newark Typographical Union, Local 103, 918 F.2d 21, 24 (3d Cir. 1990) (citing NF & M Corp. v. United Steelworkers of America, 524 U.S. 756, 760 (3d Cir.1975)). "As long as the arbitrator has arguably construed or applied the contract, the award must be enforced, regardless of the fact that a court is convinced that arbitrator has committed a serious error." News Am. Publications, 918 F.2d at 24 (citing Paperworkers v. Misco, Inc., 484 U.S. 29, 38 (1987)).

As explained below, the court concludes that there is "no support at all in the record justifying the arbitrator's" decision on attorney's fees. It is undisputed that Penneco submitted a demonstrative exhibit stating that it had incurred attorney's fees of $98,566.97, and that an executive testified that it had incurred such attorney's fees and expected to incur additional attorney's fees. The arbitrator was aware of this evidence but inexplicably deemed it of no consequence when applying Paragraph 21's directive that the "losing party shall reimburse the winning party for its legal fees." In fact, the arbitrator stated that despite Penneco's unequivocal "demonstrative" evidence, there "was no demonstrative evidence proffered" by Penneco to support an award of attorney's fees. While the evidence did not contain details about the hours spent or the rates of the attorneys, no dispute about the amount of fees set forth in the exhibit was reflected in the record.

In addition, the court finds that the arbitrator did not merely interpret Paragraph 21 to require that a party seeking to recover attorney's fees must support the request with sufficient documentary evidence, but rewrote Paragraph 21 to require: 1) a party requesting attorney's fees

11

must support the request with sufficient documentary evidence *before* either party knows if it is the winning party; 2) that attorney's fees are arbitrarily capped to a time determined by the arbitrator prior to the conclusion of the arbitration process; and 3) the winning party may not recover attorney's fees after the close of the hearing. The arbitrator's award here goes beyond mere interpretation of Paragraph 21 and amounts to "a defect or failure of the integrity of the arbitration" arising out of the arbitrator's refusal to award attorney's fees even though there was no dispute that attorney's fees had been incurred by the prevailing party. In re Lazarus Holdings, LLC, No. 8:13-AP-848-CPM, 2016 WL 5389493, at *3 (M.D. Fla. Sept. 27, 2016), *appeal dismissed*, No. 17-10044-DD, 2017 WL 6887301 (11th Cir. Apr. 24, 2017).

The court concludes that the arbitrator's award denying attorney's fees was "tainted" by "a lack of elementary procedural fairness" due to the arbitrator's refusal to allow Penneco to establish properly its attorney's fees. Silicon Power Corp. v. Gen. Elec. Zenith Controls, Inc., 661 F.Supp.2d 524, 538-39 (E.D. Pa. 2009). Penneco clearly explained in its motion to modify the award that it had presented the demonstrative evidence of its attorney's fees during the hearing but was unable to provide a final accounting of attorney's fees incurred due to the deadline for submission of exhibits, and more significantly, due to the fact that attorney's fees were being incurred at least up to the close of the arbitration hearing. Thus it was an impossibility for Penneco to submit an accurate and complete accounting of its attorney's fees prior to the close of the arbitration hearing. The arbitrator denied Penneco's motion to modify the award without explanation, which at a minimum deprives both Penneco and the court of an explanation as to why she continued to deny Penneco the ability to recover attorney's fees incurred from the date of submission of exhibits up to and including the hearing itself. The court

concludes that the arbitrator's decision was equivalent to a refusal to award attorney's fees in contravention of the plain language of the parties' agreement amounting to an alteration of the terms of Paragraph 21.

Although based on slightly different facts, <u>Mantaline Corp. v. PPG Industries, Inc.</u>, No. 2:02CV269, 2006 WL 297263 (W.D. Pa. Feb. 7, 2006), is in accord. The parties' agreement in <u>Mantaline</u> included a provision providing for an award of attorney's fees similar to the one at issue here. In <u>Mantaline</u> the provision stated that the "[p]arty against which the award is rendered shall assume and pay all costs associated with such arbitration, including but not limited to reasonable attorney's fees incurred by the other party." <u>Id.</u> at *2. Mantaline was the prevailing party and PPG was the losing party. The arbitrator ordered PPG to pay AAA administrative fees and the arbitrator's compensation. <u>Id.</u> at *5. "With respect to attorney's fees, the arbitrator found that '[t]here was no evidence presented [by Mantaline] as to what constitutes reasonable attorneys' fee[s],' but nevertheless the arbitrator found 'that reasonable attorneys' fees for this arbitration are $15,000." <u>Id.</u> Mantaline filed suit seeking, in part, to vacate the award with respect to costs and attorney's fees.

The district court found "that the award of $15,000 must be vacated because there is 'absolutely no support at all in the record justifying the arbitrator's determinations.'" <u>Id.</u> (quoting <u>United Transp. Union Local 1589 v. Suburban Transit Corp.</u>, 51 F.3d 376, 379 (3d Cir. 1995)). The district court directed that a rehearing be held on the issue of attorney's fees noting that an arbitrator "'can correct a mistake which is apparent on the face of his award.'" <u>Id.</u> at *6 (quoting <u>Colonial Penn Ins. Co. v. The Omaha Indem. Co.</u>, 943 F.2d 327, 332 (3d Cir. 1991)).

The district court summarily concluded without further discussion that the estimated award of attorney's fees of $15,000 was "a mistake which is apparent on the face of the Award." Id.

In Mantaline, like in the present case, the arbitrator was faced with a provision requiring that attorney's fees be awarded to the prevailing party, but the arbitrator had no record evidence on which to support an amount of reasonable attorney's fees. Despite having no evidence upon which to base a reasonable fee, the arbitrator in Mantaline chose to award his "best guess" as to an appropriate amount. It is the arbitrator's awarding of a specific amount based on his own admission that there was no evidence to support his award that presumably was the basis for the district court's conclusion that the award had no support at all in the record.

The arbitrator in the present case similarly pointed to a lack of record evidence on which to support an award of attorney's fees. The difference in this case, however, is that the arbitrator did have demonstrative evidence of an actual amount of attorney's fees incurred up to a certain point in time upon which she could have awarded some amount of attorney's fees. Although in both cases the arbitrator found insufficient record evidence to support an award of attorney's fees, the arbitrator's decision not to award any fees in the present case is akin to the mistake made by the Mantaline arbitrator in offering his best guess as to what reasonable fee to award. Had the arbitrator similarly awarded attorney's fees in any amount as a "best guess" based on the demonstrative evidence presented to her then like in Mantaline, the arbitrator's decision would be a mistake apparent on the face of the award. As the award was actually decided, however, the court sees no difference from a "best guess" award and a decision to award no fees at all when the parties have agreed that the "losing party shall reimburse the winning party for its legal fees." Drilling and Operating Agreement, ¶ 21. Accordingly, the court concludes that the arbitrator

made a mistake apparent on the face of her award similar to the arbitrator's mistake in Mantaline.

The court notes that in both Mantaline and the present case the parties agreed in writing that the prevailing party would be able to recover its attorney's fees, that neither party knew before the arbitrator rendered an award whether it was the prevailing party, and neither party was able to present an accurate accounting of its actual attorney's fees until after the arbitration closed. What is obvious from these observations is that, unless the parties expressly agree in writing otherwise, when an arbitration agreement provides for the prevailing party to recover attorney's fees, attorney's fees cannot be awarded until after a winner is declared.

Penneco relies on three opinions issued by New York state courts that support the conclusion reached in this case. In Bowery Residents' Committee, Inc. v. Lance Capital LLC, No. 651184/13, 2013 WL 2642960 (N.Y. Sup. Ct. June 3, 2013), aff'd, 995 N.Y.S.2d 2 (N.Y. App. Div. 2014), the parties' agreement provided that each party "shall bear its own costs in any arbitration, with the prevailing party entitled to recover its commercially reasonable attorneys' fees, costs and disbursements." Id. at *2. The arbitrator explicitly "ruled that he was not required to award legal fees under the terms of the Agreement." Id. The court in Bowery found that the arbitrator's ruling that he was not required to award fees "exceeded a specifically enumerated limitation on his power;" namely, that he "did not have the authority to exercise his discretion to not award attorneys' fees" Id. at *3. Thus, despite language requiring the arbitrator to award attorney's fees, the arbitrator ruled that he was *not* required to award such fees. While the arbitrator here did not rule that she was not required to award attorney's fees, in practice her decision not to award attorney's fees amounted to a decision in excess of a specifically

enumerated limitation on her power. The fact that she acknowledged Paragraph 21's language that the losing party is to pay the winning party's attorney's fees but did not award attorney's fees is a passive refusal to award fees.

The characterization of the arbitrator's decision as a "refusal" is also revealed by the arbitrator's response to Penneco's motion to modify the award in which she denied the motion without explanation. In two New York decisions relied upon by Penneco, the arbitrator initially refused to award attorney's fees in the face of clear language requiring such an award, but in each case the arbitrator corrected the mistake when the party requested a modification of the award. See In re Arbitration of Gleason, 726 N.Y.S.2d 493 (N.Y. App. Div. 2001), and Cohen v. Ark Asset Holdings, Inc., No. 105994/99, 2001 WL 36168559 (N.Y. Sup. Ct. Oct. 31, 2001). In both cases the complaining party on appeal was the losing party who had initially benefitted from the arbitrator's decision not to award attorney's fees. In Gleason, the arbitrator modified his award to correct his previous "erroneous determination" in which he, like the arbitrator in Bowery, initially "refus[ed] to award the successful party counsel fees . . . in excess of his powers." 726 N.Y.S.2d at 495. Similarly, Cohen involved an arbitrator who modified the award to correct her initial erroneousness determination refusing to award attorney's fees in contravention of the parties' agreement. Here, the arbitrator, despite the language of paragraph 21, chose not to award attorney's fees and continued to refuse to award attorney's fees even after the motion for reconsideration was filed Penneco.

Finally, in Spencer v. Ryland Group, Inc., 865 N.E.2d 301 (Ill. Ct. App. 2007), the parties' agreement provided, in part, that "[t]he non-prevailing party in any proceeding to enforce or contest any provision(s) of this Agreement of Sale shall pay all reasonable costs,

attorney's fees and expenses incurred by the prevailing party." Id. at 303. The arbitration award in Spencer did not mention attorney fees at all and made no award of those fees. The court characterized the arbitrator's determination not to award attorney's fees as showing on its face that the arbitrator was "imposing his own compromise arbitrarily, without the semblance of contractual authorization." Id. at 307. While the court cannot conclude that the arbitrator in this case imposed her own compromise arbitrarily, the court can conclude "that the arbitrator's award is facially inconsistent with the unambiguous language of the parties' contract." Id. at 309.

Accordingly, Penneco's motion for summary judgment on Count II will be granted, and ECA's motion for summary judgment on Count II will be denied. The court will direct that a rehearing before the arbitrator be held on the issue of attorney's fees. Colonial Penn Ins. Co., 943 F.2d at 332 (arbitrator "can correct a mistake which is apparent on the face of his award").

**B. Claim to Confirm the Arbitration Award: Count I**

In Count I Penneco seeks confirmation of the arbitration award, except for the determination as to attorney's fees. As stated in Penneco's Amended Complaint, Penneco seeks confirmation of the award of damages of $319,913.61 because "to date [February 2, 2017], ECA has failed to make full payment of the amounts due and owing to Penneco pursuant to the October 27, 2016 Arbitration Award." Am. Compl. ¶ 40. It is now undisputed that ECA has paid the entire amount of damages and Penneco has accepted the payment. ECF No. 31-4 at 41-42. Thus, the "dispute" between the parties as to Count I has become whether Count I is moot as ECA argues, or whether confirmation of the arbitration award is mandatory under 9 U.S.C. § 9, regardless of ECA's compliance as Penneco argues.

Penneco's stated reason for seeking confirmation of the arbitration award is moot. ECA has paid the award. Nonetheless, Penneco convincingly argues that under the FAA a court must grant an application for confirmation of an arbitration award "unless the award is vacated, modified, or corrected." 9 U.S.C. § 9. An "action to confirm [an] arbitration award satisfie[s] Article III's case or controversy requirement because the statutory scheme of the FAA "'clearly contemplates the confirmation of uncontested awards.'" U.S. Airline Pilots Association v. U.S. Airways, Inc., No. 2:13-cv-0627, 2013 WL 5466838, *6 (W.D. Pa. Sept. 30, 2013) (quoting Ameriprise Bank, FSB v. PNC Bank. Nat'l Ass'n, No. 12–1113, 2012 WL 5906400, *8, *10 (W.D.Pa. Nov.26, 2012), and noting that "§ 9 of the FAA explicitly provides for summary confirmation of an arbitration award"). The United States Supreme Court has noted that § 9's "provision for judicial confirmation carries no hint of flexibility." Hall St. Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 587 (2008). The Supreme Court succinctly described § 9's provision for confirmation of an award by a court as follows:

> On application for an order confirming the arbitration award, the court "must grant" the order "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." There is nothing malleable about "must grant," which unequivocally tells courts to grant confirmation in all cases, except when one of the "prescribed" exceptions applies.

Id.

ECA does not address the mandatory nature of § 9 or the case law confirming that a court must grant an application to confirm an arbitration award except in limited cases. Instead, ECA argues that because the damage amounts have been paid there is no case or controversy. ECA also takes issue with Penneco seeking summary judgment in a brief in opposition. Penneco explained, however, that it did not seek summary judgment on Count I because if it was

18

successful on Count II, Penneco sought remand to the arbitrator for a determination of attorney's fees and then Penneco would return to this court for final consideration of a damage award. ECF No. 40, at 16 n.2.

In its motion for partial summary judgment Penneco requested the court to vacate the arbitrator's award as it pertains to attorney's fees. If Penneco succeeded on its motion it would mean that a portion of the arbitrator's award would be vacated, and upon remand, subject to modification. The court determined that Penneco is entitled to summary judgment on its claim for attorney's fees and thus Penneco's claim for confirmation of the arbitration award is not appropriate until the vacated portion of the award has been addressed on remand. Accordingly, ECA's motion for summary judgment on Count I will be denied.

### C. Gathering and Marketing Fees under the Arbitration Award: Count III

There is no genuine issue of material fact that under the Farmout Agreement the post-production gathering fee permitted by the arbitration award is $0.073/DTH and the marketing fee permitted by the arbitration award was $0.03/DTH. ECA provided documentary evidence in the form of accounting records to establish that ECA has complied with the arbitrator's award and that ECA is correctly deducting gathering and marketing fees. ECF No. 31-2, at 25-50; ECF 31-3, at 1-50; and ECF No. 31-4, at 1-38. Penneco's response in opposition to ECA's documentary evidence does not create a genuine dispute about a material fact. The court agrees with ECA that Penneco failed to come forth with sufficient record evidence to dispute ECA's record evidence that it is complying with the award. Penneco included only a one-page summary of damages (ECF No. 42-3) unsupported by record evidence showing that ECA's business records are incorrect or in error. Thus, the court finds that ECA demonstrated that there is no genuine issue

of material fact that since the arbitrator's award was issued, ECA is in compliance with the award.

Penneco also seeks relief for the period of time before the arbitrator's award was issued. There is no dispute that the last production period addressed by the arbitrator's award was April 2016. Pl. Br. Opp. 17 (ECF No. 40). Both parties agree that the period from May 2016 through July 2016, predates the arbitrator's award. Id. 17-18; Def. Br. Supp. 11 (ECF No. 33). Penneco notes that the award "does not state that ECA is relieved of its obligation to make proper deductions of the gathering fees and marketing fees for the production periods immediately following the periods at issue in the arbitration hearings." Pl. Br. Opp. 18. ECA argues that for the time period from May through July 2016 it was not under a legal duty to comply with a then non-existent arbitrator's award, and that ECA is not required to go back in time and correct alleged incorrect deductions from this time period. The court agrees. The arbitrator's award remedies past gathering and marketing deductions taken by ECA by awarding lump sum damages in full settlement of "all claims and counterclaims submitted to this Arbitration." ECF No. 13-6. There is nothing in the arbitrator's award upon which the court could presently rule that Penneco is entitled to relief for alleged improper deductions for the time period prior to the arbitrator's award.[1] Accordingly, the court will grant summary judgment as a matter of law in favor of ECA and against Penneco on Count III.

---

[1] The court expresses no opinion about whether Penneco has an independent claim against ECA for damages for time periods prior to issuance of the arbitrator's award.

**V. Conclusion**

For the foregoing reasons ECA's Motion for Summary Judgment (ECF No. 31) will be granted with respect to Counts III and denied with respect to Counts I and II. Plaintiff Penneco's Motion for Partial Summary Judgment (ECF No. 34) will be granted with respect to Count II. The court will enter summary judgment in favor of ECA on Count III. The court will vacate the arbitrator's award of no attorney's fees as stated in paragraph 4 and remand this case to the arbitrator for a determination of Penneco's reasonable attorney's fees.

An appropriate order follows.

By the court:

/s/ Joy Flowers Conti
Joy Flowers Conti
Chief United States District Judge

Dated: February 15, 2018